Good morning. May it please the court, my name is Robert Gahnmeyer and I represent the appellant Darrell Jones. The prosecutor misled the jury about what the most important witness wrote about the most important evidence. That misconduct requires reversal. In his only report written directly after the incident, Officer Lee wrote, quote, I saw the defendant fidgeting about in the vehicle and reaching toward the floor. He said nothing at all about seeing the defendant reach behind him into the back seat, which is where the gun was found. You cross-examined on that, right? Well, I didn't cross-examine. The defense cross-examined. The defense cross-examined on that, yes. There was cross-examination about that. And made a great statement to the jury about just how crummy the officer's testimony vis-à-vis the report really was, right? That is correct. It is also true, however, that in the cross-examination, when the defense confronted Officer Lee with the contradiction between what he said at trial and what he wrote in his report, Officer Lee said only, I didn't use those words, no. And that's the crux of the problem here. And the defense did what? The defense, frankly, I'm not condoning the defense or saying it was the best cross-examination, because they didn't clarify what I didn't use those words no meant. Yeah, but that's the point, isn't it? You're in a trial. He said that. He didn't use those words. That's perfectly true. But he did say he saw him reaching down and reaching towards the floor and that kind of thing. So it wasn't complete. Do you think it's an inconsistent statement or just incomplete? I think it's an inconsistent statement. The reason it's inconsistent is Officer Lee wrote a detailed report. In that report, he uses the word reaching, and he uses it in one way, reaching toward the floor. He doesn't say anything about what was the critical fact, which was not whether he was reaching toward the floor, but whether he was reaching behind him into the back seat. And that was the government's entire theory of the case, was that Mr. Jones had hid the gun by reaching into the back seat and stuffing it under this booster seat. There's a floor in back, too, I take it, right? Well, of course. I am right about that, I suppose. I mean, of course there's a floor in the back seat. Okay, so he saw him reaching towards the floor, and he saw him fidgeting around. He said that, too, right? That's also true. The problem, however, is that it would be one thing if the government had argued, well, we know what Officer Lee wrote, and we know what he said at trial, and there's no inconsistency. Now, I think that would be a poor argument, but it would be a legitimate argument. The problem here is that the government took advantage of the fact that the jury didn't know what Officer Lee had written in his report. Yeah, I read that, and it's possible to read the prosecutor's argument at the end of saying, well, the police report's not in the record, and to invite the jury to speculate that, well, they weren't precisely his words, but he really had said something about the back. I understand that's a plausible construction of that argument, but it's not a guaranteed construction, and maybe, to my mind, not even all that likely. It's almost, you know, all we have is the transcript. I don't have the tone of voice, but it almost sounds like a parenthetical. Well, I understand you don't have that in front of you. I assume it could have been introduced by the defendant. Well, first, I don't think it would have been able to be introduced by the defendant, because generally a prior. . . You said would. I said could. Well, I don't know if they. . . Sure, they could have. . . I mean, they could have attempted to introduce it. I don't know under what rule of evidence it would have come in, because it's just a prior. . . Well, we have testimony from Lee as to the words that you did or didn't use in the report, and at that point, I assume that the defense can put the report in. Well, I'm not sure about that, because I think it would just be hearsay. I mean, it's not substantive evidence. It's just impeaching his testimony at trial. Well, and that's obviously what you're trying to do. You're trying to impeach his testimony. But regardless of whether that's true or not, and as I say, could the defense have done this more artfully? Absolutely. But that's not the point. The point is, did the prosecutor mislead the jury into thinking that Officer Lee's report said substantially the same thing as his trial testimony, when in fact Officer Lee's report was dramatically different than his trial testimony? Again, I take your point in certain circumstances. If the report had said no, and now on the stand he says yes, and he says, well, I didn't use those words, without telling us that previously he had written no, that's pretty misleading. This isn't quite so stark a contradiction. I do have to say that I didn't use those words is not a sort of full statement that he didn't talk about reaching behind, but it's not as though it's just an absolute flat inconsistency, yes versus no. Well, see, Your Honor, I think your question really sort of illustrates what the fundamental problem here is. It's easiest for us to debate whether or not the statement is inconsistent or just maybe he just left something out, because we know both what he wrote in the report and we know what he testified to. The problem is here that the jury, and they're the ones who are deciding the case, they have no idea what Officer Lee wrote in the report. All they know is that he said, I didn't use those words, no. And listen to what the prosecutor says about that. She says, speaking of the defense attorney, then he focuses on the report.  I'll ask you to look carefully at your notes of what Deputy Lee said. On cross-examination, he was asked about whether or not he had put in that report that he saw the defendant reach into the back of the car. And he said, and my notes say in quotes, those were not the words that I used. They are trying to make hay of this report. Now, there is no way of, listen, I don't care what tone of voice the prosecutor is using. Well, of course, and I wasn't there either, so. But the fact is that that unmistakably is urging the jury to believe that I didn't use those words, no, means that I didn't use exactly those words, but I said the same thing, and that the reason the defense didn't put the report in was because they knew that that's what it was, and then it's the defense that's trying to fool the jury, when in fact it's the prosecutor who is grossly mischaracterizing what the report said. Well, gross is one of those interesting, colorful words. I'll strike gross. If I'm making a report, I might not be a great report writer, but I might write down a sentence, a rubric, that's going to tell me, going to jog my memory and let me go in great detail about what I really did see. I don't know if that's what happened here or not. The point is the defense made an extensive argument to the jury about what the officer did or didn't do. It put in all the evidence it wanted to put in. It didn't even try to put in more. It didn't even ask the officer, well, isn't it true, officer, that what you actually said was X? It didn't do any of that. So the defense was happy with what it had done to create enough of a doubt, and the prosecutor responded the way I would rather expect a prosecutor to respond. It wasn't sleazy unless you said, well, saying you should have asked for it to be admitted might have been a problem, but that's not so clear either. Well, Your Honor, I understand your point, but respectfully, the reason I disagree with it is because it's not a case where the prosecutor is just arguing, here's what the evidence is, and take my construction of it. I admit it's possible that Officer Lee, maybe he uses fidget in a way that no one else uses the word fidget. It could be. But the jury is entitled to know, to evaluate that argument and not rely on what the prosecutor is characterizing the argument is when the prosecutor's, at best, the prosecutor's characterization of that statement is completely inaccurate. I think we fully understand your point. You've just used up all your time. Let's hear from the government. But we will give you a chance to respond. Oh, thank you very much. Good morning, Your Honors. May it please the Court. My name is Michael Morgan. I represent the United States in this matter. I think Judge Fernandez has gotten to the nub of the problem in this case, which is there's a difference between a statement that is incomplete and a statement that is inconsistent. That is all we have here. And how do we know that? We know that because Deputy Lee, on his direct examination, explained for the jury exactly what he meant when he wrote the word fidget. Yeah. I wish he had not said, however, I didn't use those words. I wish instead he had said, I didn't say that. Or, yes, I wrote this, but, you know, I didn't say that. But it's true. I just left it out. I think that the lack of completeness, I didn't use those words, is a bit of a circumlocution that makes it sound as though the lack of completeness is less critical to the defense than I think it really is. I understand Your Honor's point. But I think if the defense really believed that, they would have followed up. And they didn't. And there's a reason why they didn't. Because, in fact, his report actually is consistent with his testimony. He says, I saw him fidgeting around. In fact, that's exactly what Deputy Lee said when he was first asked, what did you see in the car? That was the first words out of his mouth on direct examination. The prosecutor then asked him to elaborate, and Lee did. No, I understand that. But when somebody, let's say you've written in your report, he ate an apple. And then you get on the stand, and you say, he ate an apple, and he ate a pear. And you say, cross-examining him, well, did you say that he ate a pear? And you say, I didn't use those words. That's an odd way to respond. You should say, no. I wrote he ate an apple. I did not write he wrote a pear. So his response is, to my mind, slightly evasive. The defense didn't follow up, and the defense had enough information, it could easily have followed up. But I viewed the response as slightly evasive. I take Your Honor's point. But I guess the problem there is that that's the record that we have. And while it may not have been the easiest answer, I mean, the most simple answer would have been no. Did you write that in the answer? No. But I think the detective was, or the deputy was being honest. Because in his mind, as he testified on direct, when he wrote fidget, this is what he meant. In his mind, this is what he meant. The defense may not believe that. That was a question for the jury, and the defense certainly argued that, you know, he didn't really mean that. But this was his testimony. So, I mean, I'm not so sure it was as evasive in his mind as it might read on the cold record. But for the prosecutor to comment on that, to simply point out that, you know, he was asked about this, he didn't say that, this was a fair inference from the record. There's two inferences that can be drawn from this record. One is that he didn't say it. Two is that he said it, or he wrote this, but he meant this. And that was a fair argument to be made on this record. And if it's a fair inference, the prosecutor is certainly entitled to argue it. Well, you know, I have to say that he wrote this and he meant that, to my mind, is not what went on even from the government standpoint. He wrote this, and he left something out. He didn't mean by what he wrote what he left out. He just left it out. I don't know if that's fatal to your case, but he just left it out. Well, I agree that he left it out, but I don't think that it's an omission in that regard. I honestly think, well, at least I don't need to honestly think, Deputy Lee testified that, in his mind, fidget meant fidgeting about. And this is a report. He's simply just trying to capture what happened on the scene. And this is a fairly shorthand way of saying what he saw. The guy's moving furtively in the cabin of the car. And I think it also needs to be pointed out that, in reality, stepping back, this is really a tepest and a teapot. This case is about the defendant is alone in the car with his 2-year-old daughter. There's no credible evidence that anyone else was using that car, so either his 2-year-old possessed the gun or the defendant possessed the gun. Unless the Court has any other questions, I would ask the judge to be affirmed. Thank you. Roberts. Would you like a minute? Just very briefly, just on that last point about whether the evidence was overwhelming or not. In fact, the evidence wasn't overwhelming. Number one, the government itself told the jury, in no uncertain terms, that the straightforward question was whether Mr. Jones had hit the gun. That's right in the prosecutor's closing. That's basically a verbatim statement of what she said. Number two, they didn't print the gun. There was no DNA evidence. There was no evidence that anyone had ever seen the gun before. It wasn't Mr. Jones' car. The car belonged to someone else. Ola Mae Ivory testified that she used the car before. It was her booster seat. She had a motive to ñ she had numerous felony convictions for dishonesty, was a felon herself. If she possessed the gun, that was a crime. I'm not saying that there's no evidence that connects Mr. Jones to the gun. But if you look at the content, if you read the trial as a whole, the evidence was not overwhelming. This was the key piece of evidence. And if you read Deputy's report, which is about a page of single-spaced description, it is inconceivable that if anyone saw someone reaching into the back, which is where the gun is found, that you ñ and the whole focus of the report is about finding the gun, that you would not put that in the report. Okay. So thank you. Okay. Thank both sides for helpful arguments. United States v. Jones has now submitted for decision the next case on the argument calendar this morning, criminal prom v. Holder. Good morning, judges. Hang on just a second while your co-counsel, while your adversary sets up. Ready? Okay. Good morning, judges. My name is Shamim Hassan, appearing for the petitioner appellate, Mr. Consolaprom. Mr. Consolaprom petitioned this court to review and vacate the decision of the Board of Immigration Appeals, which affirmed the order of the immigration judge removing him from the United States. His removal stemmed from a conviction resulting from pleading guilty to a federal offense, 18 U.S.C. 371, conspiracy to commit offense or defraud the United States. This, along with a prior conviction relating to possession of a bad check, rendered him removable on two bases, for being convicted of two crimes involving moral turpitude and for being convicted of an aggravated felony. A federal offense to commit offense or conspiracy to commit offense or defraud the United States was deemed to be an aggravated felony. This finding rendered him ineligible for several forms of relief, including cancellation of removal as a lawful permanent resident, for which he otherwise would have been eligible. Thus, Mr. Prom filed this petition to challenge the determination that his offense was aggravated felony. We argue that it's not. Mr. Prom's conviction for 18 U.S.C. 371 consisted of six underlying offenses. Of these six, two of them were determined to be connected to fraud, 18 U.S.C. Section 2314, for conspiracy to transport stolen property, and 18 U.S.C. 1001A2, conspiracy to make a false statement. These two offenses rendered him an aggravated felon under Immigration Nationally Act Section 111A43MI for offenses that involve fraud or deceit in which the loss to the victim exceeds $10,000. We argue that neither of these two offenses involve fraud or deceit, and in which the loss to the victim exceeds $10,000. Therefore, Mr. Prom should not be considered an aggravated felon. Describe the underlying crime, then, when you say that it doesn't involve fraud or deceit. Yes. The first one, 18 U.S.C. Section 213, involved the transportation of stolen property. And how was the property stolen? The property was stolen in a casino, in a car cheating activity. Right. So the actual theft was accomplished through fraud. Would you concede that? The actual theft was accomplished. Or maybe through deceit? Well, the crime was actually transportation of the stolen property. I understand that, but the underlying theft by which the property was obtained, was that accomplished through deceit? Possibly, yes. I think probably, certainly. The idea was you set up with the dealer, the dealer doesn't shuffle, and so the second deal, the players who are in league with the dealer, know the cards that are going to be played. And there's a certain amount of deceit vis-à-vis the casino, who's losing the money thereby. So once we establish that the underlying crime that produces the money is accomplished by deceit, is transportation of the ill-gotten gains also a crime accomplished by deceit? Yes, we believe that it's not. Because we're limited to how far we can look back to the underlying events, through the categorical approach and through the modified categorical approach. So what we have is the indictment. If we look beyond the statute, we look at the indictment. And the indictment is for transportation of property knowing to have been stolen, converted, or taken by fraud. So at that point, this isn't the crime of theft, of stealing, not of fraud, which most of the evidence makes it clear. And the burden is on the government to prove by clear and convincing evidence that it's some that involves fraud and not theft. And we don't think they've done so. There was a recent case by this court, Young v. Holger, which made it clear that we believe which makes it clear that this case does not involve fraud and therefore not aggravated felony. This case said that when a conjunctively phrased charging document alleges several theories of a crime, a guilty plea establishes conviction under at least one of them, but not necessarily all of them. When the statute prescribes more than one act disjunctively, it is common for prosecutors who are charging the conjunctive. Yet it is well established that to prove such a charge, a prosecutor need only prove the disjunctive, one version of the crime. In sum, when either A or B could support a conviction, a defendant who pleads guilty to charging document alleging A and B admits only A or B. Thus, when the record of conviction consists only of a charging document that includes several theories of the crime, at least one which would not qualify as a predicate conviction, then the record is inconclusive under this approach. So in our case, indictment stated, transportation of stolen property valued at $5,000 or more, knowing the same to have been stolen, converted, and taken by a fraud. However, under the ---- That ignores the rest of the indictment, doesn't it? I'm sorry? What you're saying is ignoring the rest of the indictment, all of the allegations of which are incorporated, and they clearly set forth fraud, nothing else. You know, there is no theft, is there? It is fraud. I mean, fraud is when you take property, in effect, you take property with the other person's consent. Theft is when you take it without their consent. Here there clearly was consent. It might have been a flaky kind of consent, but there certainly was consent. Well, what is actually the criminalized offense here? Let's say, for example, he engaged in card cheating activities at the casino in which the money was not taken out of the casino. There would have been absolutely no crime at all. So what he's actually being charged for is he might have been kicked out of the casino by the bouncers, that's all. I don't see how that's not a crime. I don't understand what you're saying. Of course it's a crime. If he actually cheated. If he didn't get any money, if there's no money. He didn't get the card. There was no money obtained through the card cheating, is that what you're saying? I thought there was money obtained through the card cheating. Right. But if the chips were not converted to cash and taken out of the casino and transported. It's still a crime. It's a fraud when you commit it. You might not have made the $10,000. I don't think he would have been criminalized just for that. Really? Yes. Well, you wouldn't have the transportation part of it, but you still have the fraud part. But this is more about theft, not fraud. Because if you look at another one of the indictments, it makes it clear that the first one under 1167, 18 U.S.C. 1167, it was for theft of funds in excess of $1,000 belonging to an Indian gaming establishment. That was the first offense. So this is clearly about theft, not about fraud. And if you look at the section that this statute is under, the title of the section is Transportation of Stolen Goods, Securities, Monies, Fraudulent Estate Tax, State Tax Stamps or Articles Used in Counterfeiting. And the chapter of the whole section, Chapter 113, is stolen property. Now, you know the headings don't bind us, right? I'm sorry? The headings don't bind us, right? And I do believe the crime itself does mention fraud, no? The crime itself? Yes. Knowing it could have been theft, stolen, or fraud. Regardless of what the heading might say. So we believe more of the evidence points to theft rather than fraud, and it's the burden of the government to prove there was fraud. And given the limited documents that we have, indictment, I don't think the government has proved its burden to prove that it's fraud and not theft. Why don't we hear from the government, and you've saved about a minute. I'm sorry? Why don't we hear from the government, and you've saved about a minute for rebuttal. Okay. May it please the Court. My name is Dawn Conrad, and I'm here today on behalf of the United States Attorney General. In this case, the government has established Petitioner's removability as an aggravated felon for being convicted of an aggravated felony as defined in 8 U.S.C. 1101A43MI&U. Petitioner was convicted of conspiracy under 18 U.S.C. Section 371. Since he was convicted of conspiracy, he is liable for all the acts of his co-conspirators in furtherance of the conspiracy, whether or not he directly participated in those acts. At least some of the underlying offenses to which Petitioner's conspiracy involved fraud or deceit, and Petitioner was ordered to pay over $19,000 in restitution to one of the victims of the conspiracy, a casino. As Judge Fletcher pointed out earlier, the money obtained in this conspiracy was obtained by fraud or deceit. It is the government's position that the card-cheating conspiracy is stealing money by fraud, as clearly shown in the indictment. And the entire purpose of the conspiracy was to obtain money through fraud and deceit. In Kawashima, which is a Supreme Court case, the Supreme Court noted that when Section M was enacted, the term deceit meant the act or process of deceiving as by falsification, concealment, or cheating. Therefore, the allegations in the indictment make clear that the money was obtained by fraud or deceit. And also, as the Supreme Court held in Nijuan, you can look at alternative documents even outside the indictment to determine the loss of victims, and here he was ordered to pay restitution over $10,000. And additionally, there's an alternative finding for the board even found that even if he was not removable as an aggravated felon, he's still removable for two or more crimes involving moral turpitude, which he did not challenge, either exhaust before the board or challenge before this Court. So he's still removable. And the board found that even if he was eligible for cancellation or removal, they would deny it as a matter of discretion, which he has also not challenged in his opening brief before this Court. If there are no further questions, we respectfully ask this Court to deny the petition for review. Roberts. Thank you. Thank you. Would you like your minute? First, we'd like to address the last point by the government about the board denying the cancellation application. It seems kind of strange that the board denied an application which was never even filed. He was pre-terminated from filing an application for cancellation based on the aggravated felon determination. So there was no cancellation application that was filed, and the board can't preemptively deny that. So I think it's absurd to say we waived our right to apply for cancellation or removal. And to the other point, we believe that this is clearly a theft offense and not fraud. And, in fact, there's another section of the INA which makes theft offenses aggravated felonies. That's 101A43G. The government could have charged Mr. Prom removable under that section, but they did not do so because he didn't meet the other requirement of being in prison for one year. He was only in prison for six months. So this is government desperately trying to stretch the definition of fraud. And if this is permitted, then there remains no meaningful distinction between theft and fraud. And what is the purpose of having these two different categories of aggravated felonies here? So, and as far as another underlying conviction. I'm sorry. Well, if you want to finish up, you're now over time, but you can certainly finish your thought. Sure, sure. Okay. Another conviction was for USC 1001A2 for making false statements. First of all, we believe that the false statements did not involve loss to the victim of $10,000. Because in this offense, the victim was the government. The government, the false statements were made to the government. And the government did not suffer any losses. The casino did, which it wasn't the victim in this offense. And also, case 701 versus Holder. I said singular. Okay. Thank you very much. Thank both of you for your arguments. Prom versus Holder is now submitted for decision.
judges: Fernandez, Fletcher, Rawlinson